**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-23438-BLOOM/McAliley**

ANDY R. FONTAINE,

      Plaintiff,

v.

SECRETARY MARK INCH,
FLORIDA DEPARTMENT OF
CORRECTIONS., *et al.*,

      Defendants.

_____/

**ORDER DISMISSING CERTAIN CLAIMS AND**
**ALLOWING CLAIMS TO PROCEED**

**THIS CAUSE** is before the Court upon Plaintiff Andy R. Fontaine's ("Plaintiff" or

"Fontaine") Second Amended Complaint, ECF No. [17]. For the reasons set forth below, the

Second Amended Complaint is permitted to proceed in part and is dismissed in part.

Plaintiff has been granted permission to proceed in forma pauperis and is therefore subject

to the screening provisions of 28 U.S.C. § 1915(e)(2). *See Farese v. Scherer*, 342 F.3d 1223, 1228

(11th Cir. 2003).

## I.       BACKGROUND

Plaintiff is an inmate confined at the Dade Correctional Institution ("DCI") and has filed

this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. ECF No. [12] The Complaint set forth

allegations that multiple prison officials violated his Eighth Amendment Rights. ECF No. [1]. The

Court entered its Order to Amend Complaint, ECF No. [8], as the Complaint was improper based

upon several pleading deficiencies. The Court advised that "[I]f Plaintiff's amended complaint is

directed toward more than one defendant, Plaintiff shall clearly specify how the alleged conduct

of each defendant arises out of the same transaction or is otherwise permissible in light of this Order." *Id.* at 8. Plaintiff was permitted leave to amend the complaint.

Plaintiff thereafter filed an Amended Complaint with three claims: excessive force, deliberate indifference to a serious medical need, and violations of the Americans with Disabilities Act ("ADA"). ECF No. [11]. The Court screened the Amended Complaint pursuant to 28 U.S.C. §1915A and dismissed the Amended Complaint. ECF No. [12]. The Court determined that, as alleged, Plaintiff's excessive force claim against Defendants Inch and Colon was improper because supervisory officials are not vicariously liable under § 1983 for the unconstitutional acts of their subordinates. *Id.* at 7; *Barr v. Gee,* 437 F. App'x 865, 875 (11th Cir. 2011) (quoting *West v. Tillman,* 496 F.3d 1321, 1328 (11th Cir. 2007)). Plaintiff's deliberate indifference to a serious medical need claim also failed because Plaintiff did not sufficiently allege Defendants had subjective knowledge of a risk of serious harm, disregard of that risk, or conduct amounting to more than gross negligence. ECF No. [12] at 10. Plaintiff's ADA claim against Defendants Inch and Colon in their individual capacities failed because suit against individuals under Title II of the ADA is improper. *Id.* at 12; *Brennan v. Thomas*, 780 F. App'x 813, 823 (11th Cir. 2019).

The Court granted Plaintiff a final opportunity to amend his claims, "but only to the extent that Plaintiff can identify John Doe correctional officers that he alleges used excessive force against him, and that the conduct alleged to violate the ADA also constitutes a violation of the Fourteenth Amendment, such that the Eleventh Amendment should not bar his claim." ECF No. [12] at 13.

Plaintiff filed a Second Amended Complaint against Defendants Mark Inch, Secretary of the Florida Department of Corrections in his official capacity, Jose Colon, Warden of Dade C.I. in his individual and official capacities, Centurion of Florida, LLC, Dena Tate, Health Services

Administrator, in her individual capacity, Franck Papillon, M.D., Chief Health Officer, in his individual capacity, Dora Gaxiola, M.D., in her individual capacity, and John Does #1 and #2, correctional officers in their individual and official capacities.

Plaintiff alleges excessive force and deliberate indifference to his serious medical needs resulting in injuries that aggravated his pre-existing disability. Plaintiff alleges the following facts:

Plaintiff is disabled and uses a wheelchair to move around due to a spinal injury. He was diagnosed with polyneuropathy prior to arriving at Dade Correctional Institute ("DCI") and has nerve damage in his mid to lower body and muscle spasms throughout his back. ECF No. [12] at ¶ 3-4. Plaintiff's condition causes "severe pain in the back, abdomen, pelvis, groin, penis, testicles, hips and legs. *Id.* at ¶ 3. Plaintiff arrived at DCI" on August 26, 2019. *Id.* at ¶ 1. He was scheduled to see a neurologist and prescribed Tegretol to manage his nerve pain. *Id.* at ¶ 3. A pain management plan was put in place that stated surgery should be performed to stimulate his spinal cord and he should be provided a transcutaneous electrical nerve stimulation ("TENS") unit for his back spasms. .*Id.* at ¶ 5-6. A "TENS" unit was ordered but Centurion never provided it. *Id.* at ¶ 19.

On October 24, 2019, Plaintiff inquired of Dr. Pino about his neurology consultation ordered at his prior institution and Dr. Pino renewed the request and filed a "DER" for Plaintiff's Tegretol prescription to continue. *Id.* at ¶ 7. The neurology consultation was never scheduled because Centurion categorized the request as an Alternative Treatment Plan. *Id.* at ¶ 7-8. Plaintiff's Tegretol prescription was stopped on three separate occasions, and the final time, Defendant Dr. Frank Papillion refused to renew the prescription. *Id.* at ¶ 10. Papillion instead prescribed Plaintiff Keppra, which did not provide relief for the nerve pain. *Id.* At a later appointment with Papillion and Defendant Health Services Administrator Dena Tate, Papillion refused to discuss any

neurology consultation or to provide alternative pain medication for polyneuropathy when Plaintiff told him that the Keppra did not work for the nerve pain. *Id.* at ¶ 12. Papillion told Plaintiff "if you were getting medical treatment [elsewhere] why did you come here [?]" *Id.* (alterations added). Plaintiff notes that the Tegretol was withheld for security reasons and not due to medical reasons. *Id.* at ¶ 11.

Plaintiff filed sick calls and grievances for several months but received no treatment. *Id.* at ¶ 9. After six months of "multiple appointments delaying care," Defendant Dr. Dora Glaxiola prescribed Plaintiff Cymbalta. *Id.* at ¶ 13. Plaintiff refused the Cymbalta and had a follow-up appointment with Glaxiola. *Id.* at ¶ 15. Glaxiola yelled at Plaintiff that he was allergic to everything and stated that she would only prescribe him nonsteroidal anti-inflammatory ("NSAID") drugs. *Id.* However, Plaintiff did not receive any medication to treat his nerve pain or other pain. *Id.* At some later time, ARNP Fernandez prescribed Plaintiff a 30-day supply of Sulindac, a NSAID. *Id.* at ¶ 15. Papillion and Glaxiola never examined Plaintiff's back. *Id.* at ¶ 20.

Plaintiff alleges that Centurion's policy limits the frequency and quantity of prescription refills. *See id.* at ¶ 16-17. Plaintiff alleges that it is Centurion's policy to not allow prescription renewals until 90 days have elapsed since the prior prescription was filled. *Id.* at ¶ 16. Centurion policy also limits the quantity of pills that may be filled on a given prescription. *Id.* For example, for dispensing Sulindae, Centurion only permits a 30-day supply of two pills a day over a 90-day period. *Id.* This has resulted in the Plaintiff receiving no pain management treatment for "days, weeks, and months with no medical justification." *Id.* at ¶ 17. Additionally, Plaintiff alleges that he was told by "multiple medical providers" at three separate intuitions that Centurion "no longer provides access to pain management doctors." *Id.* at ¶ 25.

Plaintiff has not seen a medical specialist for pain management since 2018, prior to arriving at DCI, when a pain management doctor ordered an MRI. *Id.* at ¶ 26. Plaintiff alleges that as a result of the delay and denial of specialist medical care and refusal to treat a diagnosed condition, Plaintiff experiences "severe pain, physical deterioration, mental anguish, loss of enjoyment of life, [and] increased disability." *Id.* at ¶ 31.

On June 6, 2020, Plaintiff was seen by the medical department complaining of severe chest pains that had lasted for a week. Id. at ¶ 38-39. The medical department performed an EKG and ordered he be transported to the hospital emergency room. *Id.* at ¶ 39. Plaintiff's wheelchair was placed in a medical personnel's office. *Id.* at ¶ 42. Defendant John Doe #1 restrained Plaintiff using handcuffs, a black box, waist chains, and shackles for transport in an ambulance to the hospital. *Id.* at ¶ 40, ¶ 43. When Plaintiff was being transported back to DCI, he told the FDOC officer he needed his wheelchair, but the officer failed to provide one. *Id.* at ¶ 44. Plaintiff was fully restrained again and brought to the wheelchair van where John Doe #1 used a hip-toss maneuver to relocate the Plaintiff from the hospital's wheelchair to the van seat. *Id.* at ¶ 45. After transport, John Doe #1 retrieved a broken wheelchair with a faulty front tire assembly to transport Plaintiff. Id. at ¶46. Plaintiff informed John Doe #1 that the wheelchair was unsafe to use and told him where to find his wheelchair. Id. at ¶ 47, ¶ 49. John Doe #1 and Defendant John Doe #2 then picked Plaintiff up by the shoulders, still fully restrained, and "dragged him across the van and put him in a broken wheelchair," injuring Plaintiff's shoulders and aggravating his existing back spasms, nerve pain, and testical pain Id. at ¶ 47, ¶ 50.

Plaintiff was left in the broken wheelchair in "a non-ADA Isolation Cell" for twenty-four hours during which time Plaintiff fell from the wheelchair while attempting to make the bed, further injuring himself. *Id.* at ¶ 49-50.

Glaxiola and Papillion refused to discuss, provide treatment, or examine Plaintiff after he sustained injuries. *Id.* at ¶ 30, ¶ 50.

Plaintiff seeks punitive, compensatory, and nominal damages from all defendants. *Id.* at ¶ 34-37, ¶ 58-60. Plaintiff seeks declaratory and injunctive relief as to claim one. *Id.* at ¶ 32-33.

Plaintiff's Second Amended Complaint is now before the Court for review.

## II.      STANDARD OF REVIEW

Under either 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A, a complaint must be dismissed if the court determines that the complaint fails to state a claim on which relief may be granted. *Wright v. Miranda,* 740 F. App'x 692, 694 (11th Cir. 2018). In reviewing the complaint under § 1915(e), the court takes the allegations as true and construes them in the light most favorable to the Plaintiff. *Hughes v. Lott,* 350 F.3d 1157, 1159-60 (11th Cir. 2003); *Maps v. Miami Dade State Attorney*, 693 F. App'x 784, 785 (11th Cir. 2017) (per curiam). Complaints filed by *pro se* prisoners are held to "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam).

In order to "avoid dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (per curiam)). Although a *pro se* pleading is liberally construed, it must still "suggest that there is some factual support for a claim." *Id.*

To state a claim for relief under § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Under § 1915(e)(2)(B)(i), courts may dismiss as frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31

(1992); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

Furthermore, the same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, under 28 U.S.C. § 1915(e)(2)(B)(ii), the court may dismiss a complaint that fails "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Although federal courts give liberal construction to *pro se* pleadings, courts "nevertheless have required them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam) (quotation omitted). Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). There is no required technical form, but "each allegation must be simple, concise, and direct." *Id.* at 8(d)(1). The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555. (quotation omitted) (ellipses in original). Additionally, each separate claim should be presented in a separate numbered paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

"[A] pro se pleading must still suggest that there is at least some factual support for a claim." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (internal citations omitted). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citing *GJR Invs., Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)); *see Rodriguez v. Scott*, 775 F.

App'x 599, 603 (11th Cir. 2019). *Pro se* pleadings "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough to just invoke a legal theory devoid of any factual basis." *Brown v. Orange Cnty. Corr. Dep't*, 699 F. App'x 916, 916-17 (11th Cir. 2017) (quoting *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (internal quotations omitted).

## III.    DISCUSSION

Plaintiff advances two claims in his Second Amended Complaint.

### A.    Claim One

*Deliberate indifference*

Plaintiff's first claim alleges deliberate indifference to a serious medical need. Plaintiff alleges he has pre-existing polyneuropathy and spinal cord injuries that were exacerbated due to delay and denial of adequate medical care from Defendants Papillion, Tate, and Gaxiola.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). The Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners . . . ." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).

To demonstrate that the Defendants were deliberately indifferent to Plaintiff's serious medical needs, Plaintiff must allege (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence. *Melton v. Abston,* 841 F.3d 1207, 1223-24 (11th Cir. 2016) (citing *Bingham v. Thomas,* 654 F.3d 1171, 1176 (11th Cir.

2011) (per curiam). Negligence in diagnosing or treating a medical condition, including "an inadvertent failure to provide adequate medical care," does not state a valid claim for deliberate indifference. *See Estelle*, 429 U.S. at 105-06. Factual allegations must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted). "A failure to respond to a known medical problem can also constitute deliberate indifference." *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003) (finding that whether a delay in treatment is tolerable depends on the nature of the medical need and the reason for the delay).

Here, Plaintiff's diagnosis of neuropathy, back pain and spasms, and spinal cord injury constitute a serious medical need. *See Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). Plaintiff alleges that Defendant Dr. Frank Papillion was deliberately indifferent to Plaintiff's serious medical needs when he refused to provide Plaintiff with the neurology consultation for pain management, refused to renew Plaintiff's Tegretol prescription for his nerve pain, and refused to examine Plaintiff's back. Plaintiff alleges he was receiving Tegretol prescriptions until Papillion refused to renew it, telling him, "[I]f you were getting medical treatment [elsewhere] why did you come here?" Plaintiff also notes that the Tegretol was withheld for security reasons and not due to medical reasons. Defendant Dena Tate was present when Papillion refused to renew Plaintiff's prescription for Tegretol.

Plaintiff filed grievances and sick calls, but Defendant Dr. Dora Glaxiola delayed Plaintiff's care for six months and then refused to prescribe Plaintiff any medication to treat his nerve pain. Plaintiff alleges that Dr. Glaxiola prescribed Cymbalta but Plaintiff refused the

prescription. Dr. Glaxiola then did not prescribe Plaintiff anything further. Plaintiff alleges that Dr. Glaxiola refused to examine Plaintiff's back.

Considering the alleged facts as true, Defendants Papillion and Glaxiola knew of Plaintiff's pre-existing medical conditions and prior course of recommended treatment, but Papillion and Glaxiola ignored Plaintiff's requests for adequate medical treatment. Although a prior neurology consultation was scheduled, Papillion refused to discuss any neurology consultation or to provide alternative pain medication after Plaintiff told Papillion that Keppra did not work for his nerve pain. As a result of the denial of adequate medical treatment, Plaintiff has suffered "severe pain, physical deterioration, mental anguish, loss of enjoyment of life, [and] increased disability." ECF No. [12] at ¶ 31.

At this stage of the proceedings, when taking Plaintiff's allegations as true, he has alleged sufficient facts to allow his deliberate indifference claims against Defendants Papillion and Glaxiola to proceed. Plaintiff alleges that Defendant Tate was present when Defendant Papillion refused to renew his Tegretol prescription. Plaintiff does not set forth sufficient allegations that Tate had subjective knowledge of a risk of serious harm and disregarded that risk by more than mere negligence. As such, Plaintiff's claim against Defendant Tate is dismissed

Plaintiff alleges that Defendant Centurion's policies limit the frequency and quantity of prescription refills. Plaintiff also alleges that it was Centurion's policy not to provide consultations for pain management specialists.

Although a private entity, Centurion may be held liable under § 1983 to the extent it is tasked with providing medical care to inmates within the DCI facilities, which is a "function traditionally within the exclusive prerogative of the state." *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997) (per curiam) (citations omitted). However, a corporation cannot be liable under §

1983 for any action or inaction taken by its employees. *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004); *Craig v. Floyd Cty., Ga.,* 643 F.3d 1306, 1309-10 (11th Cir. 2011). To hold a defendant liable as a supervisory official, a plaintiff must show that 'the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.'" *Ross v. Corizon Medical Services*, 700 F. App'x 914, 917 (11th Cir. 2017) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)) (alterations in original).

Defendant Centurion cannot be held liable simply because it employs Defendants Papillion, Glaxiola, and Tate. Plaintiff's conclusory assertions of Centurion's policy of limiting the frequency and quantity of prescriptions are not supported by factual allegations. Plaintiff states only that his prescription of Sulindae was limited to 60 pills in a 90-day period. Plaintiff's extrapolation of his personal experience with prescription refills does not equate to Centurion having an official policy of limiting prescriptions. Plaintiff's allegations that Centurion's policy is to no longer provide access to pain management doctors fails for the same reasons. Plaintiff states he was told by multiple providers that this was Centurion's policy but does not identify the source of these statements nor does Plaintiff elaborate on what "access to pain management doctors" entails. *See Craig*, 643 F.3d at 1312 (finding insufficient evidence to establish that "Georgia Correctional had a policy or custom of constitutional violations against detainees where plaintiff alleged that medical providers repeatedly gave him pain killers instead of treating him with more costly means). Plaintiff's complaint describes his visits with multiple medical providers while at DCI. At different times while receiving Centurion's medical services, he was prescribed Tegretol, Keppra, Cymbalta, and Sulindae. Plaintiff's own allegations undermine his conclusory statements

that Centurion has a policy of refusing access to pain management doctors. Plaintiff's claims against Defendant Centurion are dismissed without prejudice.

**B.      Claim Two**

*Excessive force*

Plaintiff's second claim alleges excessive force by Defendants John Doe #1 and John Doe #2. To establish a claim for excessive use of force in violation of the Eighth Amendment, "a plaintiff must show (1) that the force was sadistically and maliciously applied for the very purpose of causing harm," and "(2) that more than a *de minimis* injury resulted." *Fischer v. Ellegood*, 238 F. App'x 428, 432 (11th Cir. 2007) (internal citation omitted).

Factors to consider when determining whether the use of force was "malicious" or "sadistic" include: "(1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Stallworth v. Tyson*, 578 F. App'x 948, 953 (11th Cir. 2014) (citing *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999)) (internal quotations marks omitted). The court gives "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Id.* (quoting *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*) (internal quotation marks omitted). The "focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted." *Id.* (citing *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010)).

Here, Plaintiff alleges that Defendants committed excessive force against him when he was transported from the hospital. Defendant John Doe #1 used a "hip-toss" maneuver to relocate Plaintiff into the van seat. Once they arrived at DCI, the John Doe defendants picked Plaintiff up

by the shoulders while he was still fully restrained, dragged him across the transport van, and dropped him into a wheelchair that was broken. Plaintiff sustained injuries to his shoulders and further aggravation of his pre-existing nerve damage. At this stage of the proceedings, when taking Plaintiff's allegations as true, he has established sufficient facts to allow his excessive force claim against Defendants John Doe #1 and John Doe #2. Plaintiff's excessive force claims against Defendants John Doe #1 and John Doe #2 shall proceed.

"[F]ictitious-party pleading is [generally] not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citation omitted) (alterations added). To do so, the plaintiff must "adequately describe[] the person to be sued so that the person [can] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1216 n.6 (11th Cir. 1992) (alterations added). The Court permitted Plaintiff leave to amend to identify the John Doe defendants and to allege additional facts to support the claim against them. Plaintiff describes traveling to the hospital in an ambulance on May 7, 2020, after having chest pains. The John Doe defendants were correctional officers employed at DCI on that date that participated in Plaintiff's transport from the hospital back to DCI. Plaintiff states that the Florida Department of Corrections "is refusing to provide investigative report until discovery at which point the name can be provided."

Plaintiff is reminded it is his responsibility to provide sufficient identification by full name, title, physical description, and address so that the court can accomplish service of process on his behalf. *See* Order to Plaintiff to Provide Information for Service of Process, *Jones v. Jane Doe One*, Case No. 19-20946-CV-WILLIAMS/REID, (S.D. Fla. June 12, 2020) ECF No. [68] (citing *Fowler v. Jones*, 899 F.2d 1088, 1095 (11th Cir. 1990)) (ordering Plaintiff to file notice with the court identifying full name, badge number (if applicable), title, physical description, and address

of unidentified defendants or indicate with specificity Plaintiff's efforts to obtain this information and responses to requests).

*Deliberate indifference*

Plaintiff alleges that after he sustained injuries due to the excessive force used upon him in transport, he was left alone in an isolation cell in the broken wheelchair. He then fell from the wheelchair causing further injury. Defendants Papillion and Glaxiola refused to discuss, examine, or treat these injuries. Plaintiff has not alleged specific facts to support that Defendants were aware of his injuries let alone that they had knowledge of serious injuries and refused to provide treatment. Plaintiff's deliberate indifference claims against Defendants Papillion and Glaxiola are therefore dismissed.

## C.    ADA Claims

The Court permitted Plaintiff leave to amend his Title II of the ADA claim in order to show that the conduct alleged to violate the ADA also constituted a violation of the Fourteenth Amendment. ECF No. [12] at 13; *see Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997) ("[A plaintiff] may not bring a cause of action under 42 U.S.C. § 1983 solely for alleged violations of the ADA . . . .").

Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to state a claim of discrimination under Title II, a claimant must prove (1) that he is a qualified individual with a disability and (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was otherwise

discriminated against by the public entity (3) due to the claimant's disability. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Plaintiff did not re-allege the stand-alone ADA claim previously set forth in the Amended Complaint. *See* ECF No. [11]. Instead, Plaintiff added conclusory statements to the excessive force and deliberate indifference to a serious medical need claims that those violations occurred due to discrimination based on his disability. Other than Plaintiff's conclusory allegations that the excessive force and deliberate indifference were motivated by an intent to discriminate against him on the basis of his disability, there are no discernible factual allegations to support an ADA claim. To the extent that Plaintiff alleged an ADA claim, it is dismissed.

**D.    Defendants**

Plaintiff alleges damages claims against Defendants Mark Inch, Jose Colon, John Doe #1 and John Doe #2 in their individual and official capacities. ECF No. [17] at ¶ 2, ¶ 6-8, ¶ 37, ¶ 58-60.

*Supervisor liability*

The Court previously dismissed Plaintiff's individual-capacity claims against Defendants Inch and Colon because of well-settled law that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See* ECF No. [12] at III(B). Supervisory liability only exists if the supervisor personally participates in the alleged unconstitutional conduct or where there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *See Quinette V. Reed,* 805 F. App'x 696, 705-06 (11th Cir. 2020). Plaintiff does not allege any facts with regard to Inch's or Colon's personal involvement in depriving Plaintiff of his constitutional rights. Plaintiff alleges that Inch "knows of" Centurion's policy of limiting NSAIDs. ECF No. [17] at ¶ 24. Plaintiff alleges that Colon has knowledge of repeated use of excessive force and deliberate

indifference on disabled inmates "and failed to correct it." ECF No. [17] at ¶ 52. Plaintiff has not alleged factual allegations that support the existence of policies or customs permitting inadequate medical care and the mistreatment of disabled inmates nor has Plaintiff alleged a history of widespread abuse so as to put Inch and Colon on notice of the need to correct the alleged deprivations. *See Quinette*, 805 F. App'x at 706. The amended allegations against Defendants Inch and Colon in their individual capacity are conclusory and must be dismissed.

*Sovereign immunity*

Sovereign immunity bars Plaintiff's claim for economic damages against Defendants Inch, Colon, and the John Doe Officers in their official capacity. As noted, the official-capacity claim against Inch is one against the state of Florida. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). "This bar remains in effect when State officials are sued for damages in their official capacity." *Id.* (citations omitted). "Congress has not abrogated Eleventh Amendment immunity in 42 U.S.C. §§ 1981, 1983, or 1985 cases, and Florida has not waived its Eleventh Amendment immunity in federal civil rights actions." *Henry v. Fla. Bar*, 701 F. App'x 878, 880 (11th Cir. 2017) (citing cases). Accordingly, the Eleventh Amendment bars Plaintiff's official-capacity damages claim against Defendants Inch, Colon, John Doe #1, and John Doe #2.

### E.    Punitive damages

Plaintiff also seeks punitive damages against the Defendants. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, . . . its intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." *Smith*, 461 U.S. at 45-48 (quoting *Philadelphia, W. & B.R. Co. v. Quigley*, 62 U.S. 202, 214 (1858). At this early juncture, it cannot be determined whether punitive damages are recoverable against the Defendants arising from the facts alleged. Therefore, the punitive damages claim should proceed.

## IV.    CONCLUSION

Accordingly, it **is ORDERED AND ADJUDGED** that the Second Amended Complaint, ECF No. [17], is **DISMISSED** in part and is permitted to **PROCEED** in part:

1. Plaintiff's deliberate indifference claims against Defendants Papillion and Glaxiola shall **PROCEED**.

2. Plaintiff's deliberate indifference claims against Defendants Tate, Inch, and Centurion are **DISMISSED**.

3. Plaintiff's ADA claim is **DISMISSED**.

4. Plaintiff's excessive force claims against Defendants Inch and Colon are **DISMISSED**.

5. Plaintiff's excessive force claims against John Doe #1 and John Doe #2 shall **PROCEED**.

Case No. 20-cv-23438-BLOOM/McAliley

6.      **By March 10, 2021,** Plaintiff shall file a notice with the Court identifying the full

name, badge number (if applicable), title, physical description, and address of

unidentified Defendants John Doe #1 and John Doe #2. If Plaintiff has not

identified the Defendants John Doe #1 and John Doe #2, he shall indicate, with

specificity his efforts to obtain this information and the responses, if any, to his

requests.

7.      **By March 10, 2021,** Plaintiff shall provide summonses for the Clerk of Courts to

issue as to Defendants Papillion and Glaxiola.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 16, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Andy R. Fontaine, *Pro Se*
#148904
Columbia Correctional Institution-Annex
Inmate Mail/Parcels
216 S.E. Corrections Way
Lake City, FL 32025-2013