UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-23438-BLOOM/McAliley**

ANDY R. FONTAINE,

      Plaintiff,

v.

SEC'Y, MARK INCH,
FLORIDA DEP'T. OF CORR., *et al.*,

      Defendants.

_____/

**OMNIBUS ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO AMEND/SUPPLEMENT PLEADING AND JOINDER [OF] PARTIES**

      **THIS CAUSE** is before the Court upon Defendants' Dr. Franck Papillion and Dr. Dora Gaxiola ("Doctor Defendants") Motion to Dismiss Second Amended Complaint, ECF No. [35] ("Motion to Dismiss"), and Plaintiff's Motion to Amend/Supplement Pleading and Joinder [of] Parties, ECF No. [62] ("Motion to Amend"). The Court has reviewed the Motion to Dismiss and Motion to Amend, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion to Dismiss is granted and the Motion to Amend is denied.

**I.      BACKGROUND**

      Plaintiff, an inmate currently confined at the Columbia Correctional Institution-Annex, filed a Second Amended Complaint ("SAC") alleging that, while confined at Dade Correctional Institution ("DCI"), employees there violated his Eighth Amendment rights. ECF No. [17].[1] On

---

[1] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

February 17, 2021, after screening Plaintiff's SAC pursuant to 28 U.S.C. § 1915, the Court ordered

Plaintiff's deliberate indifference claims against the Doctor Defendants to proceed. ECF No. [21]

at 17.[2] In short, Plaintiff alleges Dr. Papillion refused to refer him for a neurology consultation,

refused to renew his Tegretol prescription, and refused to examine his back. *Id.* at 8-10. As to Dr.

Gaxiola, Plaintiff alleges that she delayed treating him for six months, refused to treat his nerve

pain, and refused to examine his back. *Id.*

In his SAC, Plaintiff alleges that he has a disability and uses a wheelchair to move around

due to a spinal injury. ECF No. [17] at 3. Plaintiff suffers from nerve damage in his mid to lower

body, muscle spasms throughout his back, and severe pain in his back, abdomen, and lower body.

*Id.* On August 26, 2019, Plaintiff was transferred to DCI. *Id.* Prior to his arrival, Plaintiff was

diagnosed with polyneuropathy; prescribed Tegretol for pain management, and had a neurology

consult scheduled. *Id.* at 4.

The Court previously summarized Plaintiff's allegations from his SAC:

> On October 24, 2019, Plaintiff inquired with Dr. Pino about his neurology
> consultation ordered at his prior institution and Dr. Pino renewed the request and
> filed a "DER" for Plaintiff's Tegretol prescription to continue. *Id.* at ¶ 7. The
> neurology consultation was never scheduled because Centurion categorized the
> request as an Alternative Treatment Plan. *Id.* at ¶ 7-8. Plaintiff's Tegretol
> prescription was stopped on three separate occasions, and the final time, Defendant
> Dr. [Franck] Papillion refused to renew the prescription. *Id.* at ¶ 10. Papillion
> instead prescribed Plaintiff Keppra, which did not provide relief for the nerve pain.
> *Id.* At a later appointment with Papillion and Defendant Health Services
> Administrator Dena Tate, Papillion refused to discuss any neurology consultation
> or to provide alternative pain medication for polyneuropathy when Plaintiff told
> him that the Keppra did not work for the nerve pain. *Id.* at ¶ 12. Papillion told
> Plaintiff "if you were getting medical treatment [elsewhere] why did you come here
> [?]" *Id.* (alterations added). Plaintiff notes that the Tegretol was withheld for
> security reasons and not due to medical reasons. *Id.* at ¶ 11.

---

[2] The Court also ordered Plaintiff's excessive force claims against John Doe #1 and John Doe #2 ("John Doe Defendants") to proceed, however, Plaintiff was ordered to file with the Court further identifying information by a date certain. *Id.* at 17-18.

Plaintiff filed sick calls and grievances for several months but received no treatment. *Id.* at ¶ 9. After six months of "multiple appointments delaying care," Defendant Dr. Dora [Gaxiola] prescribed Plaintiff Cymbalta. *Id.* at ¶ 13. Plaintiff refused the Cymbalta and had a follow-up appointment with [Gaxiola]. *Id.* at ¶ 15. [Gaxiola] yelled at Plaintiff that he was allergic to everything and stated that she would only prescribe him nonsteroidal anti-inflammatory ("NSAID") drugs. *Id.* However, Plaintiff did not receive any medication to treat his nerve pain or other pain. *Id.* At some later time, ARNP Fernandez prescribed Plaintiff a thirty-day supply of Sulindac, a NSAID. *Id.* at ¶ 15.

Papillion and [Gaxiola] never examined Plaintiff's back. *Id.* at ¶ 20.

. . .

Plaintiff has not seen a medical specialist for pain management since 2018, prior to arriving at DCI, when a pain management doctor ordered an MRI. *Id.* at ¶ 26. Plaintiff alleges that as a result of the delay and denial of specialist medical care and refusal to treat a diagnosed condition, Plaintiff experiences "severe pain, physical deterioration, mental anguish, loss of enjoyment of life, [and] increased disability." *Id.* at ¶ 31.

On June 6, 2020, Plaintiff was seen by the medical department complaining of severe chest pains that had lasted for a week. *Id.* at ¶ 38-39. The medical department performed an EKG and ordered he be transported to the hospital emergency room. *Id.* at ¶ 39. Plaintiff's wheelchair was placed in a medical personnel's office. *Id.* at ¶ 42. Defendant John Doe #1 restrained Plaintiff using handcuffs, a black box, waist chains, and shackles for transport in an ambulance to the hospital. *Id.* at ¶ 40, ¶ 43. When Plaintiff was being transported back to DCI, he told the FDOC officer he needed his wheelchair, but the officer failed to provide one. *Id.* at ¶ 44. Plaintiff was fully restrained again and brought to the wheelchair van where John Doe #1 used a hip-toss maneuver to relocate the Plaintiff from the hospital's wheelchair to the van seat. *Id.* at ¶ 45. After transport, John Doe #1 retrieved a broken wheelchair with a faulty front tire assembly to transport Plaintiff. *Id.* at ¶46. Plaintiff informed John Doe #1 that the wheelchair was unsafe to use and told him where to find his wheelchair. *Id.* at ¶ 47, ¶ 49. John Doe #1 and Defendant John Doe #2 then picked Plaintiff up by the shoulders, still fully restrained, and "dragged him across the van and put him in a broken wheelchair," injuring Plaintiff's shoulders and aggravating his existing back spasms, nerve pain, and testic[le] pain. *Id.* at ¶ 47, ¶ 50.

Plaintiff was left in the broken wheelchair in "a non-ADA Isolation Cell" for twenty-four hours during which time Plaintiff fell from the wheelchair while attempting to make the bed, further injuring himself. *Id.* at ¶ 49-50.

[Gaxiola] and Papillion refused to discuss, provide treatment, or examine Plaintiff after he sustained injuries. *Id.* at ¶ 30, ¶ 50.

> Plaintiff seeks punitive, compensatory, and nominal damages from all defendants. *Id.* at ¶ 34-37, ¶ 58-60. Plaintiff seeks declaratory and injunctive relief as to claim one. *Id.* at ¶ 32-33.

*Id.* at 3-6 (spelling of Defendants' names "Franck" and "Gaxiola" corrected).

The Doctor Defendants now move to dismiss the deliberate indifference claims asserted in the SAC.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a Rule 12(b)(6) motion, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court generally must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in plaintiff's favor. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). "Yet even in the

case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). On a 12(b) motion, courts are generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## III.   DISCUSSION

### A.  Deliberate Indifference to a Serious Medical Need

Doctor Defendants seek dismissal of the SAC on the basis that Plaintiff failed to state a claim of deliberate indifference to a serious medical need. Doctor Defendants reason that Plaintiff's general complaints about lack of treatment are belied by his own allegations. Because Plaintiff did receive medical treatment, and differences in medical judgment are not actionable

under the Eighth Amendment, Plaintiff's claims against the Doctor Defendants should be dismissed. ECF No. [35] at 1. The Court agrees.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must demonstrate: (1) a serious medical need; (2) a showing that the prison official acted with deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The Eleventh Circuit recently elaborated on the standard for deliberate indifference to a serious medical need:

> The seriousness of a medical need is an objective inquiry. *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam). A serious medical need is a medical condition that "has been diagnosed by a physician as mandating treatment," a condition that is "so obvious that even a lay person would easily recognize the necessity," or a condition that is worsened by a delay in treatment. *Mann*[, 588 F.3d at 1307] (quotation omitted). The condition must be one that "poses a substantial risk of serious harm." *Id.* (quotation omitted).
>
> Whether the defendants acted with deliberate indifference is a subjective inquiry, *Kelley*, 400 F.3d at 1284, and each defendant is "judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). To satisfy this inquiry, the plaintiff must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than gross negligence. *Harper v. Lawrence C[n]ty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010); *see also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 n.2 (11th Cir. 2020) (noting that "the Supreme Court itself has likened the deliberate-indifference standard to 'subjective recklessness as used in the criminal law,'" and that "no matter how serious the negligence, conduct that can't fairly be characterized as reckless won't meet the Supreme Court's standard") (quoting *Farmer v. Brennan*, 511 U.S. 825, 839-40, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (emphasis omitted)). He must also show that the defendants' conduct caused his injuries. *Harper*, 592 F.3d at 1234.
>
> A "simple difference in medical opinion" does not constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Nor does "an official's failure to alleviate a significant risk that he should have perceived but did not." *Farmer*, 511 U.S. at 838, 114 S. Ct. 1970. Further, the question of whether additional diagnostic techniques or treatment methods should have been used "is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation omitted); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (explaining that, where an inmate's

health complaints received significant medical care, a mere desire for a different form of treatment does not usually amount to deliberate indifference).

A delay of treatment for an obviously serious medical condition can constitute deliberate indifference when "it is apparent that delay would detrimentally exacerbate the medical problem," and if so, "the delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (quotation omitted). For a delay in medical treatment to rise to the level of a constitutional violation, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of [the] delay." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

*Pounds v. Dieguez*, 850 F. App'x 738, 739-40 (11th Cir. 2021) (per curiam) (alterations added; third alteration in original).

The Court previously screened the SAC under 28 U.S.C. § 1915 of the Prison Litigation Reform Act. ECF No. [21]; *see* § 1915(e)(2)(b)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]"); *see also Smith v. Israel*, 619 F. App'x 839, 841 n.1 (11th Cir. 2015). The same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). For purposes of the deliberate indifference analysis, the Court previously determined that Plaintiff sufficiently alleged that his polyneuropathy constitutes a serious medical need. ECF No. [21] at 9 (citing *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017)).

Plaintiff describes several medical visits with Dr. Papillion where he received treatment for the pain caused by his polyneuropathy. ECF No. [17] at 4-5. Plaintiff alleges that before Dr. Papillion refused to renew the prescription and instead prescribed him Keppra, Plaintiff's Tegretol prescription was initially renewed several times. *Id.* at 5. Some time later, Plaintiff alleges Dr. Papillion "refused to discuss the [neurology consult]" or prescribe anything other than Keppra for

pain management. *Id.* at 4-5 (alteration added). Plaintiff also alleges Dr. Papillion refused to refer him for a consult to neurology. *Id.* at 5.

Plaintiff alleges that Dr. Gaxiola delayed treating his polyneuropathy for six months, but also states that during the "[six] months of no treatment" he was treated with "less eff[ic]acious NSAIDS" that he complains "do nothing for the pain." *Id.* (alterations added). Dr. Gaxiola also prescribed Plaintiff Cymbalta, which Plaintiff refused, claiming it causes him "serious psychological side effects" and it "does not treat pain." Later, a different medical provider prescribed Plaintiff Sulindac, an NSAID. *Id.* In total, from the time Plaintiff arrived at DCI to the filing of the initial complaint, a period of less than one year, Plaintiff was prescribed Keppra, Cymbalta, Sulindac, and other NSAIDs for pain management of his polyneuropathy. *Id.* at 4-6.

In *Pounds v. Dieguez*, a recent Eleventh Circuit opinion with similar factual allegations, the Eleventh Circuit affirmed the district court's *sua sponte* dismissal of the complaint. *Pounds*, 850 F. App'x at 738. The plaintiff in *Pounds* alleged that the doctor-defendants, with knowledge of plaintiff's pre-existing serious medical condition, cancelled his referral to a specialist and refused to submit a second referral request. *Id.* at 741. The Eleventh Circuit found that the plaintiff's allegations "merely demonstrate 'a classic example of a matter for medical judgment' – that is, Pounds has alleged that he requested additional diagnostic techniques or forms of treatment that Drs. Dieguez and Ortega had the medical discretion to deny." *Id.* at 741 (citations omitted).

Likewise, Plaintiff's allegations against the Doctor Defendants are not cognizable as an Eighth Amendment deliberate indifference claim. "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation and quotation marks omitted) (alteration added;

second alteration in original); *see Hamm*, 774 F.2d at 1575 ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." (citation and quotation marks omitted) (alteration in original)). As in *Pounds*, although Dr. Papillion refused to refer Plaintiff to neurology for a consult, Plaintiff's own allegations in the SAC show that he continued to receive treatment from Dr. Papillion, Dr. Gaxiola, and several other medical professionals. ECF No. [17] at 4-6; *see Pounds*, 850 F. App'x at 742 ("Pounds's allegations reflect that he has received repeated and regular treatment for his conditions and is still being evaluated, as needed, to determine what next steps are necessary.").

The same reasoning applies to Plaintiff's disagreements with Doctor Defendants over what medications he should have been prescribed. Plaintiff's claim that Dr. Papillion refused to prescribe him Tegretol and instead prescribed him Keppra is a matter of medical judgment and cannot be a basis for finding Dr. Papillion acted with deliberate indifference. Nor can Plaintiff show that Dr. Gaxiola was deliberately indifferent for failing to treat his nerve pain where she prescribed Plaintiff Cymbalta and NSAIDs as part of his pain management care.

Furthermore, Plaintiff's claims that Dr. Papillion refused to refer him to neurology for a consultation and that he refused to renew Plaintiff's Tegretol prescription is undermined by other allegations in the SAC. Plaintiff states that on October 24, 2019, after Centurion denied his prior neurology consult because it determined he was on an "Alternative Treatment Plan," a different doctor renewed the request, but Plaintiff implies that he never received the consult, again because of Centurion's medical judgment that he was on an Alternative Treatment Plan ("ATP"). ECF No. [17] at 4; *see id.* ("Due to Centurion['s] use of Utilization Management (ATP) the Plaintiff has not seen the neurologist, nor any other replacement." (alteration added)). Plaintiff's own allegations

make it clear that he received more than one referral for a neurology consult, but Centurion, not Dr. Papillion, denied the neurology consult because Plaintiff was on an ATP. Regarding the Tegretol prescription, and in contrast to his statement that Dr. Papillion refused to renew the prescription, Plaintiff states that the Tegretol was withheld "because security not wanting people to take it." *Id.*

Plaintiff also fails to establish that Dr. Gaxiola's six-month delay in treating him constitutes deliberate indifference. "A delay of treatment for an obviously serious medical condition can constitute deliberate indifference when 'it is apparent that delay would detrimentally exacerbate the medical problem,' and if so, the delay is medically unjustified.'" *Pounds*, 850 F. App'x at 741 (quoting *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000)). Plaintiff undermines his own contention that Dr. Gaxiola delayed treating his polyneuropathy in several ways. First, it does not appear from the allegations in the SAC that Dr. Gaxiola refused to see Plaintiff. Instead, Plaintiff appears to allege that for six months Dr. Gaxiola only prescribed NSAIDs. ECF No. [17] at 5. Next, Plaintiff alleges that "denying access to proper medication and medical services" caused further deterioration, but he does not allege that the six-month delay exacerbated his polyneuropathy. *Id.* at 6. Finally, although the timeline is unclear, it is apparent from the allegations in the SAC that Plaintiff was also receiving treatment from other medical providers, undermining his contention that medical treatment for his polyneuropathy went untreated for six months. *Id.* at 4-8.

Additionally, Plaintiff's allegations that the Doctor Defendants refused to examine his back are conclusory and constitute a difference in medical opinion—particularly where, as here, Plaintiff recounts multiple medical appointments with both Defendants during which he received treatment for his polyneuropathy. And during the same period, Plaintiff also received documented

treatment from non-party medical providers for his polyneuropathy. These allegations, without more, do not support a plausible inference that the Doctor Defendants were deliberately indifferent to Plaintiff's medical needs. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted) ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of [deliberate indifference]." (alterations added) (citing *Waldrop*, 871 F.2d at 1033)).

Finally, to the extent that Plaintiff raises a deliberate indifference claim against the Doctor Defendants in the SAC for failing to provide any medical treatment to him after the excessive force incident, that claim is dismissed as wholly conclusory. Plaintiff alleged only that "[t]he medical department under [Papillion], Gaxiola and Tate refused to provide any treatment or even an exam." ECF No. [17] at 10 (alterations added). Plaintiff failed to allege any factual details to support the allegation regarding the date, time, or place of the refusal of medical treatment. Nor did Plaintiff provide any information regarding causation between the supposed deliberate indifference of the Doctor Defendants and any injury he suffered.

### B.  Excessive Force against the John Doe Defendants

The Court previously determined that Plaintiff's excessive force claims against the John Doe Defendants would proceed. ECF No. [21] at 17. This Order does not dismiss Plaintiff's excessive force claims. However, the Court previously ordered that

> Plaintiff shall file a notice with the Court identifying the full name, badge number (if applicable), title, physical description, and address of unidentified [John Doe Defendants]. If Plaintiff has not identified the [John Doe Defendants], he shall indicate, with specificity, his efforts to obtain this information and the responses, if any, to his requests.

*Id.* at 18 (alterations added).

On March 16, 2021, Plaintiff filed Notice of Attempts to Acquire Names of John Doe #1 and John Doe #2 from (FDC), ECF No. [28] ("Notice"). Plaintiff detailed the steps taken from the

time of the alleged excessive force incident to filing of the Notice to determine the identities of the John Doe Defendants. *See id.* In addition, Plaintiff requested that the Court issue a *Subpoena Duces Tecum* to the Florida Department of Corrections so that he can obtain documents to help him identify the John Doe Defendants, which the Court granted. *See* ECF Nos. [53], [54]. Plaintiff has made a good faith effort to discover the identities of the John Doe Defendants, but, to date, has not determined their names or uncovered further identifying information. The Court is not unsympathetic to Plaintiff's allegations and will allow Plaintiff to continue his efforts to determine further identifying information of the John Doe Defendants.

### C. Motion to Amend

In the Motion to Amend, Plaintiff requests leave to supplement the SAC to include new facts and parties that he contends relate to his existing claims, which the Court construes as a request to file a third amended complaint. Plaintiff asserts that Dr. Gaxiola retaliated against him, filing fraudulent information into his medical file, and seeks to add several additional medical personnel who were also deliberately indifferent to his medical needs. Plaintiff asserts further that he should be permitted to amend to assert claims against additional parties who he contends participated in the reprisal against him for filing grievances against medical and this current case, and to assert a claim for violation of due process, equal protection, and cruel and unusual punishment against Mark Inch, the Secretary of the Florida Department of Corrections and Centurion Health Services.

Specifically, Plaintiff seeks to assert a claim of retaliation against Dr. Gaxiola for placing alleged false information in his medical file after the initiation of this case (Claim III), requesting damages and injunctive relief requiring the removal of the fraudulent information so that his wheelchair pass is not taken away; a due process and equal protection claim against Mark Inch

and Centurion for failing to take disciplinary action against medical staff who have retaliated against Plaintiff as a result of this case (Claim IV); requesting damages and a permanent injunction to prevent the removal of his wheelchair and related equipment passes; a claim for collusion and conspiracy to interfere with Plaintiff's civil rights and rights under the Americans with Disabilities Act, the Rehabilitation Act, and the First, Fifth, and Fourteenth Amendments against various additional medical providers arising from the alleged failure to treat him for conditions unrelated to his polyneuropathy and proposed removal of his wheelchair (Claim V); and a claim against a nurse and physician's assistant for failure to provide adequate treatment for pain from his back spasms and neuropathic pain, and edema in his legs (Claim VI).

Generally, Rule 15 of the Federal Rules of Civil Procedure governs amendment to pleadings. Apart from initial amendments permissible as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, "when a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2, 1419 (11th Cir. 1998). Rule 16 states that requests for leave to amend after the applicable deadline, as set forth in a court's scheduling order, require a showing of "good cause." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (quotation marks omitted); *see also Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366-67 (11th Cir. 2007) (holding that "where a party files an untimely motion to amend, [courts] must first determine whether the party complied with Rule 16(b)'s good cause requirement," before considering whether "justice so requires" allowing amendment). If the movant "was not diligent, the [good

cause] inquiry should end." *Sosa*, 133 F.3d at 1418 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

Here, pursuant to the Court's Scheduling Order, the deadline to amend the pleadings or join parties was July 12, 2021. ECF No. [46] at 2. The Motion to Amend was provided to the facility where Plaintiff is housed for mailing on July 13, 2021. ECF No. [62] at 1. In addition, the Certificate of Service is signed on July 13, 2021, and the Motion to Amend is postmarked July 14, 2021. *See* ECF No. [62] at 11-12. As such, although only one day late, Plaintiff's request to amend is untimely. *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016) ("Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." (quoting *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir.2009))).

Furthermore, Plaintiff has not demonstrated good cause for the failure to seek leave to amend prior to the expiration of the deadline set in the Court's Scheduling Order, because the new conduct he complains of occurred well before the applicable deadline, and Plaintiff did not seek an extension of time to amend the Scheduling Order. For example, Plaintiff asserts that Dr. Gaxiola retaliated after Plaintiff told her that she would be receiving a summons in this case. *See* ECF No. [62] at 2-3. Dr. Gaxiola was served on March 22, 2021, and the Motion to Dismiss was filed on April 9, 2021. ECF Nos. [32], [35]. As such, the Motion to Amend and the record in this case do not evince good cause for the delay in seeking to add new claims and new parties.

Even if Plaintiff's Motion to Amend were timely, leave to amend would not be warranted in this case because there has been undue delay. "A district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause

undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings." *Carter v. HSBC Mortg. Servs., Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) (quoting *Tampa Bay Water v. HDR Eng'g, Inc.,* 731 F.3d 1171, 1186 (11th Cir.2013) *abrogated on other grounds by CSX Transp., Inc. v. General Mills, Inc.*, 846 F.3d 1333, 1335 (11th Cir. 2017)). "Prejudice is likely to exist if the amendments involve new theories of recovery or would require further discovery." *Id.* Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]" *Foman*, 371 U.S. at 182.

Here, as already noted, it appears that Plaintiff has been experiencing the alleged retaliation at least since the initiation of this case and has therefore known of the facts supporting his new claims for nearly one year. Yet, Plaintiff has not sought leave to amend to assert these additional claims until recently, even though the Court previously permitted Plaintiff leave to amend his complaint twice. Moreover, the addition of the proposed new parties and new claims would essentially restart this case—requiring another screening, service of process upon the new defendants, and additional discovery regarding his new claims of retaliation, which he asserts are related to his grievances regarding medical care and the filing of this lawsuit. However, these new claims do not relate to the surviving claims for use of excessive force against the John Doe Defendants. As such, permitting Plaintiff a third opportunity to amend at this juncture would further delay the proceedings in this case.

## IV.   CONCLUSION

Accordingly, it **is ORDERED AND ADJUDGED** as follows:

Case No. 20-cv-23438-BLOOM/McAliley

1.  Defendants Dr. Franck Papillion's and Dr. Dora Gaxiola's Motion to Dismiss, **ECF No. [35]**, is **GRANTED**. Plaintiff's deliberate indifference claims against the Doctor Defendants are **DISMISSED with prejudice**.

2.  Plaintiff's Motion to Amend, **ECF No. [62]**, is **DENIED**.

3.  **By August 20, 2021**, Plaintiff shall file a status report with the Court regarding the progress of his efforts to identify the John Doe Defendants.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 26, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Andy R. Fontaine, *Pro Se*
#148904
Columbia Correctional Institution-Annex
Inmate Mail/Parcels
216 S.E. Corrections Way
Lake City, FL 32025-2013